PIEDMONT & ARLINGTON LIFE INSURANCE CO. v. A. B. FITZGERALD AND WIFE.

(No. 443, Op. Book No. 2, p. 675.)

ERROR from Anderson County. Opinion by WALKER, P. J.

*Statement of the case.* This suit was brought for damages for the alleged wrongful act of the P. & A. Insurance Co. in forfeiting a policy issued by the company on the 18th day of March, 1872, to A. B. Fitzgerald, for the benefit of his wife, in the sum of $1,000, gold, and for the wrongful act of the company in refusing to receive from them the annual premiums to the time the policy was forfeited, being a period of five years, and amounting in

the aggregate to $175.20, annual dividend of $5, gold, amounting in the aggregate to $25, gold; alleging the conversions of said sums by the company, and praying judgment for $500 damages. The company was cited by publication. The company pleaded to the jurisdiction that it did not reside, or have an office or agency, in the state of Texas, nor did the petition show that it had any effects in the state; and specially answered that Fitzgerald, at the time he made his application, was afflicted with asthma; that he failed to pay his premiums as they became payable, wherefore the policy determined and ceased. Also that Fitzgerald was estopped by certain admissions made in his application to have his policy reinstated, e. g., that the company was not bound, and that he was at the time and now diseased with asthma. Fitzgerald, by replication, alleged that the company owned property in Texas; that if he failed to pay his premiums, it was because the company had no agent in Texas to receive them. That he had paid his premium for 1876 to one Ash, and called upon Ash to pay the one for 1877 before it was due, when Ash informed him that he was not authorized to receive it; that he then wrote to Richmond, Va., the general office, as to how he should pay, and was informed that his policy was forfeited; that he was then induced to apply to have the policy renewed, and it was fraudulently refused; that the premiums for 1874 and 1875 had been accepted and received by the company long after they were due, and the company was thereby estopped from claiming a forfeiture. On the trial, judgment was rendered for plaintiffs for $300.

§ 1345. *Plea in abatement to the jurisdiction, upon the ground that it was not alleged that the non-resident defendants had property or effects in the state.* The plea in abatement was not sworn to, but the facts relied upon were such as not to require that it should be; for the petition alleged the non-residence and did not aver that the company had an office in the state or owned property within the jurisdiction of the court. If the plaintiff had

not met and repelled the force of this plea in abatement, it would seem that, where the service of the non-residents was not by process within the state, the plea should have prevailed and defeated the action. [Pinnoyer v. Neff, 5 Otto, 714.] It was competent, as was done for plaintiffs, to amend, alleging that defendant had property in the state, so as to bring their case within the jurisdiction of the court. [Ward v. Lathrop, 11 Tex. 287; Evans v. Mills, 16 Tex. 196.] A similar right is also accorded the defendant to amend his answer to meet plaintiffs' amendment changing the grounds on which they claimed jurisdiction for the court. [Haygood v. Dial, 43 Tex. 625.] This the defendant did not do, and in legal effect there remained no available plea in abatement after the plaintiffs filed their supplemental petition, and the case stood, for all the purposes of the jurisdictional question, as if the original petition had alleged the facts necessary to jurisdiction, and without any plea in abatement controverting the existence of such facts or otherwise excepting to the jurisdiction.

Defendant answered to the merits of the case, but did not thereby waive the benefit of the plea in abatement. [Haygood v. Dial, 43 Tex. 625; Robinson v. Schmidt, 48 Tex. 13; 8 Otto, —.]

§ **1346.** *Consent may confer jurisdiction of the person where there is jurisdiction of the subject matter.* If the court has jurisdiction of the subject matter or cause of action, consent may confer jurisdiction of the legal person or corporate body, and the appearance of a foreign corporation to the action by an attorney, and answering thereto, amounts to such consent and places the defendant in court subject to its jurisdiction. [Rorer on Interstate Law, 282; McCormick v. Penn. Cent. R. R. 49 N. Y. 303; 16 Johns. 5; 1 Denio, 441; 2 E. D. Smith, 38; 5 Sandf. 423; 4 Duer, 606 (note); 39 How. Pr. 466.]

The rule announced in Butterworth v. Kinsey, 14 Tex. 495, that where the plaintiff is a resident of this state, it is not essential to jurisdiction, in an action *in personam,*

that defendant should reside or have property in the state, does not diminish or control jurisdiction in such instances, whenever the non-resident defendant voluntarily appears and submits to the jurisdiction, or, what is equivalent thereto, where he unavailingly pleads in abatement and at the same time pleads to the merits of the action. If defendant had traversed the jurisdictional facts stated in plaintiffs' amended petition, then such plea should have been sworn to, else it would, on motion, have been stricken out. [9 Tex. 61; 12 Tex. 279; 25 Tex. Sup. 129; 31 Tex. 332.]

§ 1347. *Acts which estop an insurance company from insisting upon a literal compliance with the conditions of the policy of insurance.* Where the policy contained a stipulation to the effect that "no tender of money or payment of premiums to an agent shall be the basis of a claim against the company, except on such receipt as is specified in the notice to applicants on the margin," *held,* that such a stipulation might be waived in fact, or that the acts of the company with reference to it might be of such a character as that it would be estopped from insisting upon a literal compliance. Any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. [Insurance Co. v. Eggleston, 6 Otto, 572.] An insurance company may waive any condition of a policy inserted therein for its benefit. As the company may at any time, at its option, give authority to its agents to make agreements or to waive forfeitures, it is not bound to act upon the declaration in its policy that they have no such authority. Whether it has or has not exercised that option, is a fact provable by either written evidence or parol. As denoting the power given by an insurance company to a local agent, evidence

is admissible as to its practice in allowing him to extend the time for the payment of the premiums and premium notes; and the jury, upon such evidence, may find whether he was authorized to make such an extension, and if so, whether it was in fact made in the case on trial. [Insurance Co. v. Norton, 6 Otto, 234.] The principle that no one shall be permitted to deny that he intended the natural consequences of his acts, when he has induced others to rely upon them, is as applicable to insurance companies as to individuals. This principle is one of sound morals as well as of sound law, and its enforcement tends to uphold good faith and fair dealing. If, therefore, the conduct of the company in its dealings with the assured has been such as to induce a belief that so much of the contract as provides for a forfeiture, if the premium be not paid on the day it is due, would not be enforced if payment were made within a reasonable period afterwards, the company ought not, in common justice, to be permitted to allege such forfeiture against one who has acted upon the belief, and subsequently made the payment. And if the acts creating such belief were done by the agent, and were subsequently approved by the company, either expressly or by receiving and retaining the premiums, the same consequences would follow. [Insurance Co. v. Wolff, 5 Otto, 330.] *Held* that, under the facts disclosed in this record, the company had no authority to forfeit the policy, and that, from the previous dealings of the parties, the plaintiff had the right to presume that what he did towards the payment of his premium was right and proper.

§ **1348.** *Measure of damages for illegally forfeiting insurance policy.* In an action of this character, the damages to which a party injured is entitled by a breach of the kind here complained of are not limited to the amount of the premiums paid with interests. If a life insurance company improperly refuse to accept the premium under a plea that the policy is void an action may be maintained against them for damages, and it seems that the rule of damages

would not be confined to the amount of the premiums paid with interest. If the person whose life is insured, though alive, should be laboring under a disease that must speedily result in death, the insurers ought not to be permitted to escape the payment of the amount for which the life was insured, by putting an end to the contract. [May on Insurance, § 429; McKee v. Phœnix Ins. Co. 7 Jones (Mo.), 383; Cohen v. Mutual L. Ins. Co. 50 N. Y. 610 ] Where no special damages have been alleged or proven, the question of the amount of the damages is for the most part left to the jury, and only in cases of actual damages clearly in excess of what is proper, will new trials be granted [Ledbetter v. Burns, 42 Tex. 508]; and on questions of fact the court always interferes with great hesitation and reluctance with the verdict of a jury. [2 Sedgwick, p. 651, note a; Penn. R. R. Co. v. Goodman, 62 Pa. St. 329.]

December 18, 1880.    Affirmed.